Slip Op 10 - 111

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

|  |  |  |
|---|---|---|
| KING SUPPLY COMPANY LLC, d/b/a KING ARCHITECTURAL METALS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: R. Kenton Musgrave, Senior Judge |
| | : | Court No. 09-00477 |
| UNITED STATES, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| and | : | |
| | : | |
| WELDBEND CORP., TUBE FORGINGS OF AMERICA INC., and HACKNEY LADISH, INC., | : | |
| | : | |
| Defendant-Intervenors. | : | |

## OPINION

[Administrative determination that certain pipe fittings from China used in structural applications are within scope of antidumping duty order remanded to the International Trade Administration, U.S. Department of Commerce; judgment for the plaintiff.]

Decided: September 30, 2010

*Barnes, Richardson & Colburn* (*Thomas V. Vakerics*, *Stephen W. Brophy*, *Cortney O'Toole Morgan*, *Jeffrey S. Neeley*, *Matthew T. McGrath*, and *Michael S. Holton*), for the plaintiff.

*Tony West*, Assistant Attorney General, Civil Division, United States Department of Justice, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Michael D. Panzera*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Natasha Robinson Coates*), of counsel, for the defendant.

*Mayor Brown LLP* (*Simeon M. Kriesberg* and *Jeffrey C. Lowe*), for the defendant-intervenor Weldbend Corporation.

*Neville Peterson LLP* (*Lawrence J. Bogard* and *Casey Kernan Richter*), for the defendant-intervenor Tube Forgings of America, Inc.

*Saul Ewing, LLP* (*John Burt Totaro, Jr.*) for the defendant-intervenor Hackney Ladish, Inc.

Musgrave, Senior Judge:   The plaintiff King Supply Co. LLC ("King") invokes jurisdiction under 28 U.S.C. § 1581(c) to contest the ruling by the International Trade Administration of the U.S. Department of Commerce ("DOC" or "Commerce") that King's imports are within the scope of *Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value: Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China,* 57 Fed. Reg. 29702 (July 6, 1992) ("Order), which is directed, in pertinent part, to

> carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form. These formed or forged pipe fittings are *used to join sections in piping systems* where conditions require permanent, welded connections, as distinguished from fittings based on other fastening methods (e.g., threaded, grooved, or bolted fittings). . . .

57 Fed. Reg. at 29703 (italics added).  *See* 19 C.F.R. § 351.225(k).[1]

---

[1]   19 C.F.R. § 351.225(k) provides that when considering whether a particular product is included within the scope of an antidumping duty order, Commerce (*viz.* "the Secretary") is obliged to consider the following:

> (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.

> (2)  When the above criteria are not dispositive, the Secretary will further consider:
>      (i)  The physical characteristics of the product;
>      (ii)  The expectations of the ultimate purchasers;
>      (iii)  The ultimate use of the product;
>      (iv)  The channels of trade in which the product is sold; and
>      (v)  The manner in which the product is advertised and displayed."

19 C.F.R. § 351.225(k).

King asserted to Commerce that its imports are used in structural applications, not piping systems, and hence are not within the scope of the Order. Commerce, however, concluded that the second sentence, above, "does not contain an end-use exclusion" that would otherwise exclude King's pipe fittings, implying, in essence, that the Order applies to all pipe fittings regardless of end use. DOC Final Scope Ruling Decision, PDoc 29, at 5. Commerce then ruled that King's imports are within the Order's scope because they meet the physical description of subject merchandise. For the following reasons, the court is persuaded that Commerce's rationale for its decision is incorrect. The matter must therefore be remanded for further proceedings consistent with this opinion.

### *Standard of Review*

Review at this stage is pursuant to the substantial evidence standard of 19 U.S.C. § 1516a(b)(1)(B)(i), meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Micron Tech, Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997). The context of such "reasonableness" is with respect to the record as a whole. *See Mittal Steel Galati v. United States,* 31 CIT 730, 731, 491 F. Supp. 2d 1273, 1275 (2007) (*citing Nippon Steel Corp. v. United States*, 485 F.3d 1345, 1350-51 (Fed. Cir. 2006)). Although the Court will give "significant" deference to Commerce's interpretation of its own antidumping duty orders, it will not do so with respect to an interpretation that changes the scope of a particular order or contradicts the order's express terms. *See*, *e.g.*, *Sango International L.P. v. United States*, 32 CIT ___, ____, 556 F. Supp. 2d 1327, 1332 (2008); *Allegheny Bradford Corp. v. United States*, 28 CIT 830, 842, 342 F. Supp. 2d 1172, 1183 (2004).

### *Discussion*

### I

The language of an antidumping duty order is the "cornerstone" of scope analysis. *See Allegheny Bradford*, 28 CIT at 843, 342 F. Supp. 2d at 1184 (citations omitted).  Scope language may be clarified for a low-threshold of ambiguity but not be interpreted so as to effectively change an order's scope nor declared ambiguous where no ambiguity exists.  *See*, *e.g.*, *id*. (referencing *inter alia Novosteel SA v. United States*, 284 F.3d 1261, 1272 (Fed. Cir. 2002).  *See also Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002) ("review of the petition and the investigation may provide valuable guidance as to the interpretation of the final order . . . [b]ut they cannot substitute for language in the order itself[:] . . . *a predicate for the interpretive process is language in the order that is subject to interpretation*") (italics added); *Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995) (unfair trade orders may not be interpreted in a manner that changes their scope).

The defendant and defendant-intervenors argue that the second sentence of the Order's scope language is simply meant to distinguish permanent versus non-permanent fastening methods, as opposed to pipe fittings used in piping systems.  For example, the defendant's brief describes a key criterion as "permanent, welded connections *of the sort* used in piping systems[.]" Def.'s Br. in Resp. to Pl.'s Mot. for J. Upon the Agency R. at 11 ("Def.'s Br.") (italics added).  The problem with this construct is that it does not comport with the actual language of the Order.  It is well established that operative terms in antidumping duty orders are to be given effect as written and not rendered mere surplusage.  *See*, *e.g.*, *Eckstrom Industries Inc. v. United States*, 254 F. 3d 1068,

1073 (Fed. Cir. 2001) ("the Government's interpretation of the conditions of use provision renders this language mere surplusage"); *Bond Street, Ltd. v. United States*, 33 CIT ___, ___, 637 F. Supp. 2d 1343, 1351 (2009) (key language in the order is not to be rendered "mere surplusage"); *Vertex Int'l, Inc. v. United States,* 30 CIT 73, 79-81 (2006) (Commerce is required to give effect to express language in antidumping duty orders).  The defendant's (and defendant-intervenors') reading of the Order either renders "used . . . in piping systems" mere surplusage, erroneously conflates the quality of usage embodied by that phrase with joining methods, or inserts other language that simply does not exist in the Order.

   Be that as it may, the court concurs with Commerce's finding that consideration of the *Diversified Products* factors of 19 C.F.R. § 351.225(k)(2) was unnecessary.  *See Allegheny Bradford*, 28 CIT at 845, 342 F. Supp. 2d at 1185 (where the meaning of an order is plain, there is nothing more to interpret).  King's alternative argument regarding subsection (k)(2) therefore need not be addressed.  The Order's scope language plainly states, "[t]hese formed or forged pipe fittings are *used to join sections in piping systems* where conditions require permanent, welded connections, as distinguished from fittings based on other fastening methods (*e.g.*, threaded, grooved, or bolted fittings)" (italics added).  The Order describes *the* use (one and only one use) of the pipe fittings subject to the scope of the investigation.  No other use is described.  As so described, it amounts to an exclusive use.  To conclude that this language is merely an example of "possible use" is to impute meaning that the language simply does not possess.  *Cf. Duferco Steel*, *supra*, 296 F.3d at 1096 ("Commerce cannot find authority in an order based on the theory that the order does not deny authority").  The reference to use in piping systems does not indicate, for example, a qualification

of "for example," "*e.g.*," "such systems as," "chiefly used," "principally used," "capable of being

used," or any other such similarly expansive signal that would indicate the interpretation the

defendant and defendant-intervenors apparently argue.  Further, contrary to Commerce's (and the

defendant-intervenors') reading of the second sentence of the scope language, the fastening methods

of pipe fittings are a separate consideration from, and do not alter, this apparently explicit product

use requirement.

 Scope definitions that include use as a defining characteristic of subject merchandise

have been routinely upheld,[2] and Commerce has apparently described usage with more precision and

specificity in other contexts when including or excluding products from the scope of an antidumping

duty order.[3]  The defendant-intervenor Tube Forgings of America (TFA) thus argues that in such

---

 [2] *See, e.g.*, *IPSCO, Inc. v. United States*, 13 CIT 489, 494, 715 F. Supp. 1104, 1109 (1989) (end-use certification procedure adequate to address concern that pipe actually used in non-OCTG applications not be included within scope of orders) (citing *Mitsubishi Elec. Corp. v. United States*, 12 CIT 1025, 1051 700 F. Supp. 538, 559 (1988) (scope limited to subassemblies "dedicated exclusively for use" in cellular mobile telephones), *aff'd*, 898 F.2d 1577 (Fed. Cir.1990)); *Ericsson GE Mobile Communications Inc. v. United States*, 21 CIT 71, 955 F. Supp. 1510 (1997).

 [3]  *See, e.g.*, *Live Swine from Canada*, 70 Fed. Reg. 12181 (DOC Mar. 11, 2005) (final determination) (excluding live swine used exclusively for breeding stock); *Softwood Lumber Products from Canada*, 69 Fed. Reg. 4489 (DOC Jan. 30, 2004) (final results, new shipper review) (excluding softwood lumber products entered as part of a single family home package or kit that is certified for use solely for the construction of the single family home specified by the home design matching the entry); *Carbon and Certain Alloy Steel Wire Rod from Mexico*, 67 Fed. Reg. 55802 (DOC Aug. 30, 2002) (final determination) (excluding *inter alia* "1080 grade tire cord quality wire rod and grade 1080 tire bead quality wire rod" because these quality designations presume use in product applications outside the scope of the investigation); *Engineered Process Gas Turbo-Compressor Systems from Japan*, 62 Fed. Reg. 24394 (DOC May 5, 1997) (final determination) (excluding "turbo-compressor systems incorporating gas turbine drivers, which are typically used in pipeline transmission, injection, gas processing, and liquid natural gas service"); *Small Diameter Circular Seamless Carbon and Alloy Steel, Standard, Line and Pressure Pipe from Italy*, 60 Fed. Reg. 31981 (DOC June 19, 1995) (final determination) (excluding boiler and
(continued...)

contexts Commerce often requires end-use certificates when excluding products based on end-use,

suggesting that the absence of a certificate requirement is a reason to find there is no end use

restriction in the Order, but the Court cannot discern a consistent administrative policy on end-use

certification.[4]  Even if one could be discerned, TFA's argument would appear to be directed more

towards requiring certification in this instance, since the argument does not imply that "[t]hese . . .

pipe fittings are used to join sections in piping systems" has any meaning other than as written.

 And lest the reader wonder if there is sufficient ambiguity in "piping systems" to

encompass structural applications, the record of the investigation reveals that all the parties,

including Commerce and the U.S. International Trade Commission ("ITC" or "Commission"), had

---

[3] (...continued)
mechanical tubing if not produced to certain ASTM standards and not used in standard, line, or pressure applications); *Oil Country Tubular Goods from Canada*, 51 Fed. Reg. 15029 (DOC Aug. 19, 1986) (final determination) (excluding pipe not intended for use in drilling for oil or gas).

[4] *Cf. Cellular Mobile Telephones and Subassemblies From Japan*, 50 Fed. Reg. 51724 (DOC Dec. 19, 1985) (requiring end use certification) *with Oil Country Tubular Goods (OCTG) From Canada*, 51 Fed. Reg. 21782 (DOC June 16, 1986) (end-use restrictions imposed but end-use certificates not required), *and IPSCO, supra* (noting implementation of administrative end-use certification procedure), *and Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 31970 (DOC June 5, 2008) (final determinations), Issues and Decision Memorandum, comment 1 (observing that although Commerce has implemented certification programs, it disfavors them due to difficulty of administration) (citing Memorandum from Joseph A. Spetrini, to Eric I. Garfinkel, "Final Determination   Abolishment of the End Use Certification Procedure" (Sep. 4, 1990) (end-use certification of OCTG from Canada abandoned in 1990). *See also Laminated Woven Sacks Committee v. United States*, Slip Op. 10-81 (July 23, 2010) at 23 (observing that both Commerce and Customs are well-equipped to administer antidumping duty orders "without the burden of implementing a certification program"); *Certain Small Diameter Carbon and Alloy Seamless Standard, Line and Pressure Pipe From Romania*, 65 Fed. Reg. 48963 (DOC Aug. 10, 2000) (amended final determination) (placing burden on petitioner to show circumvention before requiring end-use certification); *Live Swine From Canada, supra* (ditto); *Certain New Pneumatic Off-The-Road Tires from the People's Republic of China*, 73 Fed. Reg. 40485 (DOC July 15, 2008) (final determinations), Issues and Decision Memorandum, comment J:1 (request for end-use certification neither necessary nor appropriate).

a precise understanding of what "piping systems" are: in the context of the Order, they are essentially

conveyances, *i.e.*, systems of pipes that encompass and enable the flow of a gas or fluid.[5]  *Cf.*

*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (1998) (upholding Commerce's

determination to apply precise and literal terms of an "unambiguous" order referring to principle use

and not actual use).  The substantial evidence of record, as King points out, supports finding only

two apparent uses for carbon steel butt-weld pipe fittings: in piping systems and in structural

applications.  *Cf.* ITC Final Report at A-7.  The latter were plainly not included specifically in the

scope language of the Order, which only describes "use[ ] . . . in piping systems."

　　　　　The remaining points by the defendant and defendant-intervenors do not appear

meritorious and need not be further addressed.  Commerce has interpreted the Order in a manner

---

　　　[5]  *Webster's* defines "conveyance" *inter alia* as "[a] channel or passage for conduction or transmission as of fluids, electricity, *etc*." *Webster's New International Dictionary* at 583 (2nd ed., 1954).  The ITC's Final Report describes the product under examination as "butt-weld-pipe fittings . . . [which] are used to connect pipe *sections* where conditions require permanent, welded connections" (italics added) and then elaborates as follows:

> The primary industries that use these butt-weld [pipe] fittings include chemicals, oil
> refining, energy generation, construction, and shipbuilding.  These industries
> use butt-weld fittings in piping systems that convey gases or liquids in plumbing, heating,
> refrigeration, air-conditioning, automatic fire sprinkler, electrical conduit, irrigation,
> and process-piping systems for application in energy production, power generation,
> and manufacturing.[ ]  Butt-weld [pipe] fittings are used to join pipes in straight
> lines, and to change or divide the flow of oil, water, gas, or steam in commercial,
> residential, or industrial piping systems.  *Structural uses include fences, guardrails,
> playground equipment, and scaffolding*.

USITC Final Report at A-5   A-7 (italics added).  *Cf. Sango International L.P. v. United States*, 484 F.3d 1371, 1373 ("[p]ipe fittings are formed connector pieces that are used in the construction of piping systems"), 1374 (petitioners allege "the principle use of malleable iron pipe fittings are in gas lines, piping systems of oil refineries, and gas and water systems of buildings")  (Fed. Cir. 2007).

inconsistent with its plain meaning, and therefore the matter must be remanded for further proceedings not inconsistent herewith.

II

It may well be that what Commerce and the domestic industry intended was not what turned out to have been described in the final determination and order   and if so, perhaps the result of drafting oversight or clerical error.  That is not the concern here, however.  Suffice it to state that by treading in Commerce's footsteps and reading the record of the antidumping petition and investigation, the court is unable to find evidence to support Commerce's interpretive conclusion regarding the scope of the Order, as written and as published.  *Cf.* 19 C.F.R. § 351.225(k)(1).

From the time of the May 1991 domestic carbon fitting industry petition[6] to the final affirmative determinations by Commerce and the Commission, the operative language "used to join sections in piping systems" remained unchanged even though the domestic pipe fittings industry submitted comments on the scope language of the investigations, with the result that the language was altered in certain ways not relevant to this proceeding.  *See Initiation of Antidumping Duty Investigation: Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 56 Fed. Reg. 27730 (DOC June 17, 1991) ("[t]hese formed or forged pipe fittings are *used to join sections in piping systems* where conditions require permanent, welded connections . . ." ) (italics added); *Preliminary Determination of Sales at Less Than Fair Value: Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 56 Fed. Reg. 66831, 66832 (DOC

---

[6] *In the Matter of Certain Carbon Steel Butt-Weld Pipe From the People's Republic of China and From Thailand; Petition For The Imposition of Antidumping Duties*, Public Record Document 30 (DOC May 22, 1991).

Dec. 26, 1991) ("[t]hese formed or forged pipe fittings are *used to join sections in piping systems* where conditions require permanent, welded connections . . .") (italics added); *Final Determination of Sales at Less Than Fair Value: Certain Carbon Steel Butt-Weld Pipe Fittings From the People's Republic of China*, 57 Fed. Reg. 21058, 21059 (DOC May 18, 1992) ("[t]hese formed or forged pipe fittings are *used to join sections in piping systems* where conditions require permanent, welded connections . . .") (italics added); *Certain Carbon Steel Butt-Weld Pipe Fittings From the China and Thailand*, USITC Pub. 2401 at 2 n.2 (Inv. Nos. 731-TA-520 and 521) (Preliminary) (July 9, 1991), *reprinted at* 56 Fed. Reg. 32587, 32587 n.2 (ITC July 17, 1991) ("[t]hese formed or forged pipe fittings are *used to join sections in piping systems* where conditions require permanent, welded connections . . .") (italics added); *Certain Carbon Steel Butt-Weld Pipe Fittings From China and Thailand; Investigation*, 57 Fed. Reg. 2783, 2784 n.1(ITC Jan. 23, 1992) (notice of institution and schedule of final material injury investigation) ("[t]hese formed or forged pipe fittings are *used to join sections in piping systems* where conditions require permanent, welded connections . . .") (italics added); *Certain Carbon Steel Butt-Weld Pipe Fittings From China and Thailand*, USITC Pub. 2528 (Inv. Nos. 731-TA-520 and 521) (Final) (June 25, 1992), *summarized at* 57 Fed. Reg. 29331 (ITC July 1, 1992) (final determination) (repeating the scope of the preliminary determination and final investigation institution notice, specifically with respect to the use in piping systems of subject merchandise).  *But cf. Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China and Thailand*, 56 Fed. Reg. 24410 (Inv. Nos. 731-TA-520 and 521) (Preliminary) (ITC May 30, 1991) (notice of institution of preliminary investigation; stating that products being investigated were finished or unfinished carbon steel butt-weld pipe fittings, less than 14 inches in inside

diameter, and provided for in subheading 7307.93.30 of the Harmonized Tariff Schedule of the United States).  And for that matter, the interpretation of ancillary documentation cannot substitute for or contravene the plain meaning of legally operative terms in the Order.  *See Tak Fat Trading Co. v. United States*, 396 F. 3d 1378 (Fed. Cir. 2005) (the language of the order determines its scope); *Duferco Steel*, *supra*, 296 F.3d at 1097 (the language in the order is the "cornerstone" of analysis of an order's scope).

### *Conclusion*

Commerce's scope determination that the Order applies to pipe fittings meeting the physical requirements of the Order's scope language advances an interpretation that is unsupported by the language of the Order and is therefore unlawful.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i).  At the same time, the court upholds Commerce's decision not to conduct a *Diversified Products* analysis pursuant 19 C.F.R. § 351.225(k)(2) on the ground that the relevant scope language is plain or "unambiguous," *see*, *e.g.*, Def.'s Br. at 11, to wit: "[t]hese . . . pipe fittings are used to join sections in piping systems . . . ."   The scope of the Order cannot reasonably be construed to apply to pipe fittings used only to join sections in structural applications.  As to what Commerce requires in that regard, to prevent circumvention of the Order, the court expresses no opinion, but the matter must be remanded so that Commerce may issue a scope determination consistent with this opinion.

Judgment will enter accordingly.

/s/  R. Kenton Musgrave
R.  Kenton Musgrave, Senior Judge

Dated:  September 30, 2010
        New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

KING SUPPLY COMPANY LLC, d/b/a
KING ARCHITECTURAL METALS,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

WELDBEND CORP., TUBE FORGINGS
OF AMERICA INC., and HACKNEY
LADISH, INC.,

Defendant-Intervenors.

Before: R. Kenton Musgrave, Senior Judge
Court No. 09-00477

## JUDGMENT

This matter having been submitted for decision and the court, after deliberation, having rendered a decision thereon; now, in conformity with that decision, it is hereby

**ORDERED, ADJUDGED and DECREED** that judgment be, and it hereby is, entered in favor of the plaintiff on its USCIT Rule 56.2 Motion for Judgment on the Agency Record, and it is further

**ORDERED, ADJUDGED and DECREED** that the determination of the defendant International Trade Administration, U.S. Department of Commerce ("ITA") that imported carbon steel butt-weld pipe fittings from the People's Republic of China used in structural applications are within the scope of *Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value: Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic*

Court No. 09-00477                                                                 Page 2

*of China,* 57 Fed. Reg. 29702 (July 15, 1992) is unsupported by substantial evidence or otherwise

not in accordance with law, and it is further

       **ORDERED** that this matter be, and it hereby is, remanded to the ITA with

instructions to issue a scope determination excluding carbon steel butt-weld pipe fittings used for

structural applications from the scope of the antidumping order on certain carbon steel butt-weld

pipe fittings from China.


                                     /s/  R. Kenton Musgrave
                                    R.  KENTON MUSGRAVE, Senior Judge

Dated: September 30, 2010
        New York, New York