Slip Op 11 - 2

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KING SUPPLY COMPANY LLC, d/b/a KING ARCHITECTURAL METALS, | |
| Plaintiff, | |
| v. | Before: R. Kenton Musgrave, Senior Judge<br>Court No. 09-00477 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| WELDBEND CORP., TUBE FORGINGS OF AMERICA INC., and HACKNEY LADISH, INC., | |
| Defendant-Intervenors. | |

**OPINION**

[Redetermination of pipe fittings from China used in structural applications as outside scope of antidumping duty order remanded to International Trade Administration, U.S. Department of Commerce.]

Decided: January 6, 2011

    *Barnes, Richardson & Colburn* (*Thomas V. Vakerics*, *Stephen W. Brophy*, *Cortney O'Toole Morgan*, *Jeffrey S. Neeley*, *Matthew T. McGrath*, and *Michael S. Holton*), for the plaintiff.

    *Tony West*, Assistant Attorney General, Civil Division, United States Department of Justice, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Michael D. Panzera*); Office of the Chief Counsel for Import Administration, United States Department of Commerce (*Natasha Robinson Coates*), of counsel, for the defendant.

    *Mayor Brown LLP* (*Simeon M. Kriesberg* and *Jeffrey C. Lowe*), for the defendant-intervenor Weldbend Corporation.

Court No. 09-00477 Page 2

*Neville Peterson LLP* (*Lawrence J. Bogard* and *Casey Kernan Richter*), for the defendant-intervenor Tube Forgings of America, Inc.

*Saul Ewing, LLP* (*John Burt Totaro, Jr.*) for the defendant-intervenor Hackney Ladish, Inc.

Musgrave, Senior Judge: Presuming familiarity with Slip Op. 10-111 (Sep. 30, 2010) ("Opinion"), remanding to the International Trade Administration, U.S. Department of Commerce ("Commerce") the administrative ruling on the scope inquiry of plaintiff King Supply Co. LLC ("King") with respect to a certain antidumping duty order on carbon steel butt-weld pipe fittings ("BWPF"),[1] this opinion considers Commerce's results of remand ("Remand Determination") that now, under protest, exclude from the ambit of the Order BWPF imported and used by King only in architectural or structural applications. Weldbend Corporation and the government urge sustaining the Remand Determination, while Tube Forgings of America, Inc. ("TFA") and King argue for further remand.

I

King requests further remand with instruction to Commerce to identify the specific language in the Remand Determination that constitutes the scope ruling. *See* Comments of Plaintiff on Final Results of Redetermination by the Department of Commerce, dated December 1, 2010 ("King's Comments"), at 2-3. There is no need, because the Remand Determination is clear: "[i]n accordance with the Court's instructions, this redetermination pursuant to remand construes the

---

[1] *See Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value: Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China,* 57 Fed. Reg. 29702 (Dep't Comm. July 6, 1992) ("*Order*").

scope of the order as excluding pipe fittings used only in structural applications, such as King's fittings used for structural applications, from the *Order*."[2]  Remand Determination at 1.

In addition, King argues the Remand Determination is internally inconsistent. Specifically, King requests deletion of "only" therefrom because it "may mistakenly be read to the effect that 'dual use' pipe fittings are not excluded from the [*Order*] as dual use pipe fittings are not limited in use to structural applications."  King's Comments at 3.  King also requests deletion of "used by King" to ensure that pipe fittings imported by King ostensibly for resale and eventual use in structural applications are excluded from the *Order*.  *Id*. at 3-4.

These requests appear to emanate from examination of page 4 of the Remand Determination, which explains Commerce's finding that pipe fittings "imported by King and used by King in structural applications" are excluded from the antidumping duty order, as compared with page 5 of the redetermination, which generally explains that pipe fittings used in structural applications are excluded from the order without regard to the identity of the importer (or user).  *Cf*. Remand Determination at 4-5 *with* King's Comments at 1-4.  The government's detailed response, with which the court concurs, needs little elaboration:

> Consistent with the Court's order, Commerce excluded pipe fittings used in structural applications from the order without regard to the identity of the importer. This fact is underscored by the language found in the scope ruling on page 5 of the remand redetermination.  In its scope ruling, Commerce explains that "[i]n accordance with the Court's instructions, this redetermination . . . construes the scope of the order as excluding pipe fittings used only in structural applications, *such as* King's fittings used for structural applications."  Remand Determination at 5 (emphasis added).  The phrase "pipe fittings used only in structural applications" provides that pipe fittings used in structural applications    regardless of the identity

---

[2] "*Order*" was not specifically defined in the Remand Determination, but context, *passim*, indicates the original antidumping duty order was intended.

of the importer    are excluded from the order.  The words "such as" identify pipe fittings used by King in structural applications as merely an example of such pipe fittings excluded from the antidumping duty order.

The language on page 4 of the remand redetermination, which states that "we find that fittings imported by King and used by King in structural applications . . . are not covered by the scope of the Order," is not inconsistent with the scope ruling on page 5.  This language must be read in the proper context.  In the paragraph that precedes the statement in question, Commerce identifies factual evidence presented by King during the scope proceeding that indicated that its pipe fittings were used exclusively in structural applications and not piping systems.  Remand Determination at 4.  In restating this information about King's business practice, Commerce responds in the following paragraph [with] its finding that pipe fittings imported and used by King now are excluded from the order.  This finding on page 4, when read in its proper context, represents Commerce's conclusion with respect to coverage based upon specific factual statements made in the preceding paragraph about King's business practice.  There is no basis for interpreting Commerce's conclusion as to certain facts somehow constitutes the scope ruling itself.  Because there is no internal inconsistency in the remand redetermination, King's request that this matter be remanded to Commerce again should be rejected.

For similar reasons, King's argument that Commerce should delete the words "used by King" from the remand redetermination is unsupported.  *See* King's Comments at 3-4; *see also* Remand Determination at 4 ("[W]e find that fittings imported by King and *used by King* in structural applications, as described above, are not covered by the scope of the Order") (emphasis added).  King argues that the phrase in question, which is found on page 4 of the remand redetermination, indicates that "in order to be excluded from the order, the imported pipe fittings must be used by King in structural applications."  King's Comments at 4.  King then explains that "pipe fittings imported by King for resale and eventual use in structural applications are covered by the order, an interpretation in direct contradiction of the Court's order."  *Id*.

As explained above, the phrase in question is part of a sentence that does not constitute the scope ruling.  To the contrary, the sentence serves as the logical conclusion as to specific factual statements made in the preceding paragraph on page 4.  There is no basis, therefore, to conclude that "pipe fittings imported by King for resale and eventual use in structural applications" somehow are covered by the antidumping duty order.  *See* King's Comments at  4.  Therefore, this Court should reject King's argument that Commerce should remove the phrase "used by King" from the remand redetermination.

> Fourth, there is no valid basis for King's request that Commerce delete the word "only," which precedes "structural applications" in certain instances, from the remand redetermination. *See*, *e.g.*, Remand Redetermination at 5 ("[T]his redetermination pursuant to remand construes the scope of the order as excluding pipe fittings used *only* in structural applications . . . from the [*Order*].") (emphasis added). According to King, the use of the word "only" "in this context . . . may mistakenly be read to the effect that 'dual use' pipe fittings are not excluded from the order as dual use pipe fittings are not limited in use to only structural applications." King's Comments at 3. King's concerns are unfounded.
>
> This Court held that Commerce was required to exclude carbon steel butt-weld pipe fittings used for structural applications from the scope of the antidumping order. Commerce followed the Court's instruction by issuing a scope ruling that excluded such pipe fittings. *See* Remand Redetermination at 5. Commerce included the word "only" in its remand redetermination to emphasize that pipe fittings used in structural applications are excluded from the antidumping order (*i.e.*, *only* pipe fittings used in structural applications are excluded from the [*Order*]), whereas those used in piping systems remain covered by the [*Order*]. The use of the word "only" in the remand redetermination is consistent with this distinction, and in no way renders Commerce's remand redetermination inconsistent with the Court's order.
>
> King's insistence that the use of the word "only" may be misinterpreted is wholly speculative and unsupported by any evidence. In any event, any such a misinterpretation would be inconsistent with the Court's holding that the end-use of the pipe fitting determines whether it is covered by the antidumping duty order, rather than the potential manner in which the pipe fitting may be used. *See* Court Order accompanying . . . Slip Op. 10-111 . . . at 2 (ordering Commerce to issue a scope determination "excluding carbon steel butt-weld pipe fittings *used* for structural applications from the scope of the antidumping order on carbon steel butt-weld pipe fittings from China.") (emphasis added). For these reasons, King's request that the Court order Commerce to remove the word "only" from the remand redetermination should be denied.

Defendant's Response to Comments Regarding Redetermination Pursuant to Court Remand, dated December 16, 2010 ("Defendant's Response"), at 3-6 (court's ellipses in last paragraph).

> For these reasons, King's request for further remand is denied.

II

A

For its part, TFA criticizes this court's original order of remand. TFA (re)argues that the *Order* was intended to cover *all* pipe fittings meeting the *Order*'s physical description and that this court's rationale on the absence of an expansive signal ("*e.g.*," "such," *etc.*) in the clause "used to join sections in piping systems" is a logical fallacy because a restrictive signal ("exclusive," "only," *etc.*), normally expected if structural applications were intended to be excluded from the *Order*'s scope, is likewise absent.[3] According to TFA, the Opinion reduces the second sentence of the scope language to "used . . . in piping systems" when the entire sentence actually serves to further define the term "butt-weld" by distinguishing such fittings from other fitting forms, such as threaded, grooved or bolted. The latter clauses of the second sentence, TFA contends, provide the "expansive signal" the court "required" and are proof that its reading of the sentence is correct and the court's incorrect. "[A]t best," TFA argues, "used . . . in piping systems" is "ambiguous" and is to be resolved by reference to the description contained in the petition, the initial investigation, and the

---

[3] *See* Comments of Defendant-Intervenor Tube Forgings of America, Inc. on The United States Department of Commerce's Final Results of Redetermination Pursuant to *King Supply Company LLC, d/b/a King Architectural Metals v. United States, et al.*, Court No. 09-00477, Slip Op. 10-111 (September 30, 2010), dated December 1, 2010 ("TFA Comments"), at 5 (referencing Opinion at n.3). Specifically, TFA contends the referenced administrative determinations are "inapposite" to "the proposition that end-use restrictions are common and accepted limitations on the scope of antidumping duty orders because the determinations cited by the Court each include express restrictive language." *Id*. However, these determinations were referenced only to support the observation that "Commerce has apparently described usage with more precision and specificity in other contexts when including or excluding products from the scope of an antidumping duty order." Opinion at 6.

determinations of Commerce and the ITC, as required by 19 C.F.R. § 351.225(k)(1).  *See generally* TFA Comments at 3-7.

Such comments seem to overlook both the Opinion and the Remand Determination. *See*, *e.g.*, Opinion at 6 ("contrary to . . . the defendant-intervenors'[ ] reading of the second sentence of the scope language, the fastening methods of pipe fittings are a separate consideration from, and do not alter, this apparently explicit product use requirement").

It may be recalled the *Order* is directed against

> carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form.  These formed or forged pipe fittings are used to join sections in piping systems where conditions require permanent, welded connections, as distinguished from fittings based on other fastening methods (*e.g.*, threaded, grooved, or bolted fittings). . . .

57 Fed. Reg. at 29703.

It may also be recalled the domestic petitioners were aware this language was being employed as the investigation and determinations progressed.  *See Order* at 9 ("the domestic pipe fittings industry submitted comments on the scope language of the investigations, with the result that the language was altered in certain ways not relevant to this proceeding").

As for King, its scope ruling did not depend upon discerning whether the scope language implies that all piping systems require permanent, welded connections, or that some piping systems do not require permanent, welded connections.  The physical specifications of the merchandise subject to the scope of the *Order* and addressed in the latter part of the second sentence are not a matter of dispute and did not require further discussion.  The operative scope language, indicated by this matter, is the following: (1) "*The products covered by this order*" (*i.e.*, subject

merchandise; italics added) have certain physical characteristics. (2) "*These . . . pipe fittings*" (*i.e.*, subject merchandise) "*are used to join sections in piping systems* where conditions require . . ." *et cetera* (italics added).

This reference to use in piping systems cannot be ignored, or interpreted away, or expansively interpreted as merely "an example of an instance where a permanent, welded connection is desired."[4] To do so effects a *material alteration* in the expressed scope of the *Order*, as originally published, and there is no authority for such alteration in the context of a scope inquiry pursuant to 19 C.F.R. § 351.225 (as previously discussed). *See*, *e.g.*, *Duferco Steel Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002); *Eckstrom Industries, Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001); *Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995); *Allegheny Bradford Corp. v. United States*, 28 CIT 830, 342 F. Supp. 2d 1172 (2004). TFA, however, in essence argues for an interpretation that accomplishes precisely that.

TFA's position, that the *Order* in fact covers all less-than-14-inch BWPF, depends for its validity on an *obvious* ellipsis in the second sentence of the scope language. None, however, is discernable. Even if familiarity with the product leads to the observation that BWPFs are not only used in piping systems, it does not logically follow, from the language employed in the *Order*, that "subject merchandise," to which the *Order* is directed, is obviously or necessarily all BWPF. *See*, *e.g.*, *Eurodif S.A. v. United States*, 30 CIT 682, 431 F. Supp. 2d 1351 (2006) (non-physical aspects of merchandise may remove it from the "class or kind of merchandise" intended to be covered by

---

[4] *See Final Scope Ruling: Antidumping Duty Order on Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China*, Public Record Document ("P.R. Doc.") 29 at 5.

an unfair trade order), *aff'd* 217 Fed. Appx. 963 (Fed. Cir. 2007), *rev'd on other grounds*, __ U.S. ___, 129 S. Ct. 878 (2009).

        Furthermore, *arguendo*, even if "used . . . in piping systems" could be construed as ambiguous, the court again notes (as it did in the Opinion) that there is nothing apparent in the record, nor do the parties point to anything, that would resolve that ambiguity.  The investigation, as well as the determinations of Commerce and the ITC all describe the subject merchandise using language nearly identical to that used in the Order, to wit: "used . . . in piping systems," Opinion at __, and no evidence suggests (nor do the parties argue) that the term  "piping systems" may be defined more broadly.  *See generally* Opinion  at 9-11.  *Cf. John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 109 (1993) ("reading the words 'to the extent' to mean nothing more than 'if,' the Department has exceeded the scope of available ambiguity"); *United States v. Turkette*, 452 U.S. 576, 581, 587 n.10 (1981) (aids or guides to statutory interpretation are to be relied upon to resolve ambiguity, not create it); *Nippon Kogaku (USA), Inc. v. United States*, 673 F.2d, 380, 383 (1982) (same).  Since those sources did and do not illuminate that the *Order*'s scope language is susceptible to interpretation beyond the plain terms employed, any *arguendo* assumption of ambiguity at that point would necessarily call for reference to the *Diversified Products* criteria of 19 C.F.R. § 351.225(k)(2), as King previously argued in the alternative, which includes consideration of "the expectations of the ultimate end users" and "the ultimate end use of the product." Such a review would not, at first blush, appear to support TFA's favored "interpretation."

        As previously discussed, the second sentence of the *Order*'s scope language identifies piping system use   and only piping system use   when describing how the subject merchandise is

used. This is the public expression of the scope of the *Order* with respect to subject merchandise. The language employed is literal, plain, clear, and without obvious indication that "used . . . in piping systems" is superfluous or exemplary. *See Walgreen Co. of Deerfield IL v. United States*, 620 F.3d 1350, 1357 (Fed. Cir. 2010) ("[w]hile the petition, factual findings, legal conclusions, and preliminary orders can aid in the analysis, *they cannot substitute for the language of the order itself, which remains the 'cornerstone' in any scope determination*") (italics added); *Duferco Steel Inc. v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002) (same). The only apparent statutory authorization for including articles that do not fall within an order's literal scope is via the anti-circumvention provisions of 19 U.S.C. § 1677j. *See, e.g.*, *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998). The present matter, however, involves a scope inquiry, and it is, rather, TFA's reading of "used to join sections in piping systems" that amounts to a material alteration of that phrase. That reading expands beyond the plain meaning of this publicly expressed scope language to depend upon either the addition of material words that are conspicuously absent (*e.g.*, an expansive signal), or ignorance of the phrase altogether. While the addition of a restrictive signal would certainly *add* clarity, TFA's argument in that regard does not logically imply that "used . . . in piping systems" is unclear in its own right, or susceptible of meaning other than as written. And by the same token, the scope language of the *Order* does not specify "all" with respect to the pipe fittings that are expressed to be the subject of the *Order*.

The *Order* may not be interpreted in a manner contrary to its literal terms. *E.g.*, *Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Cir. 1990). TFA's (re)argument of the matter at this stage provides no cogent reason for altering the court's previous conclusion.

B

On the Remand Determination itself, TFA challenges Commerce's conclusion that the pipe fittings imported by King are used exclusively in structural applications as unsupported by substantial evidence. *See* TFA's Comments at 11-13. TFA contends

> [t]he only record evidence supporting the conclusion that King and its customers *never* use the BWPF imported by King in piping systems is provided by King's assertions regarding the final use of the products. With respect to King's customers, the record is devoid of any evidence except King's unsupported and carefully qualified assertion that its BWPF is not used in piping systems "to the best of {its} knowledge." Verification of the claim that neither King nor its customers ever utilize BWPF imported by King in piping systems was not produced and[,] given the post-importation nature of Kings assertion, is not possible.
>
> Thus, the record contains, on one hand, King's assertion that its BWPF are not used in piping systems and, on the other hand, uncontroverted evidence that King's BWPF are physically identical to BWPF used in piping systems and are manufactured to meet industry standards for BWPF used in piping systems. [Commerce]'s conclusion that the BWPF imported by King are used exclusively in structural applications is thus unsupported by substantial evidence on the record and should be rejected.

*Id*. at 12-13 (italics in original).

The government's response is again instructive:

> As an initial matter, the statement in Commerce's remand redetermination that King's pipe fittings were used exclusively for structural applications refers only to pipe fittings imported and used by King, not its customers. In the remand redetermination, Commerce quoted a statement from King's scope ruling request and explained that "King provided information and evidence supporting its claim that its fittings were used exclusively in 'the production of handrails and other structural applications.'" Remand Redetermination at 4 (quoting Letter to Secretary of Commerce, from Law Firm of Sandler, Travis & Rosenberg, P.A. (Mar. 30, 2009) ("Scope Request"), P.R. Doc. 1, at 7) (emphasis added). The citation following this statement reads: "*See* Scope Inquiry Request, at 7." This citation refers to the statement found on page 7 of King's scope ruling request, where King explains that, "[t]o the extent *King Architectural uses a small portion of its pipe fittings internally, that use is devoted exclusively to the production of handrails and other structural applications*." *See* Scope Request at 7 (emphasis added). Thus, as evidenced by the

> language on page 7 of King's scope request, which Commerce directly quoted in its remand redetermination, the statement in the remand redetermination refers only to King's use of its pipe fittings and not that of its customers.
>
> Ignoring that Commerce referred only to the manner in which King itself uses its pipe fittings, TFA incorrectly concludes that there is not substantial evidence on the record to support a finding that King's pipe fittings are used in structural applications. Contrary to TFA's contentions, as explained in the remand redetermination, King provided sufficient substantial evidence to support its claim, including, but not limited to, written statements from King itself, statements from its website, as well as photographs. *See* Remand Redetermination at 4; *see also* Scope Request at 7 ("To the extent King Architectural uses a small portion of its pipe fittings internally, that use is devoted exclusively to the production of handrails and other structural applications."); *see also* Scope Request at Attachment 8B (providing several photographs of pipe fittings produced by King and used in structural applications); *see also* Scope Request at Attachment 9E (containing a page from King's website, which describes King's business as limited to producing pipe fittings only used in structural applications). An examination of this evidence demonstrates that Commerce reasonably concluded that to the extent King uses pipe fittings, those pipe fittings are used exclusively in structural applications. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951); *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Thus, to decide that a decision is supported by substantial evidence, the Court need only find evidence "which could reasonably lead to [Commerce's] conclusion," so that the conclusion was a "rational decision." *Matsushita Electrical Industrial Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). In light of the uncontested evidence presented, Commerce reasonably concluded that King's pipe fittings are used in structural applications. Because Commerce's determination is supported by substantial evidence, this Court should reject TFA's request for further remand proceedings.

Defendant's Response at 8-9.

Examination of the record reveals substantial evidence supporting Commerce's conclusion. The Remand Determination will therefore be sustained and final judgment entered.

                                                  /s/ R. Kenton Musgrave
Dated: January 6, 2011                   R. Kenton Musgrave, Senior Judge
       New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| KING SUPPLY COMPANY LLC, d/b/a KING ARCHITECTURAL METALS, | : : : : |
| Plaintiff, | : : |
| v. | : : |
| UNITED STATES, | : : |
| Defendant, | : : |
| and | : : |
| WELDBEND CORP., TUBE FORGINGS OF AMERICA INC., and HACKNEY LADISH, INC., | : : : : |
| Defendant-Intervenors. | : : |

Before: R. Kenton Musgrave, Senior Judge
Court No. 09-00477

**JUDGMENT**

      The plaintiff having filed a challenge to the ruling, dated October 20, 2009, of defendant International Trade Administration, U.S. Department of Commerce ("ITA") on the scope of *Antidumping Duty Order and Amendment to the Final Determination of Sales at Less Than Fair Value: Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China,* 57 Fed. Reg. 29702 (Dep't Comm. July 6, 1992), and interposing a motion for judgment upon the agency record pursuant to USCIT Rule 56.2, resulting in remand of the matter to the ITA for further consideration; and the ITA having filed herein on November 10, 2010 its Final Results of Redetermination, dated November 8, 2010, pursuant to Slip Op. 10-111 (Sep. 30, 2010); and this court having reviewed those results and the parties comments thereon and finding the redetermination in accordance with the order of remand; now therefore, after due deliberation, it is

      **ORDERED, ADJUDGED and DECREED** that the ITA's Final Results of Redetermination, dated November 8, 2010, be, and they hereby are, sustained.

Dated: January 6, 2011
      New York, New York

/s/ R. Kenton Musgrave
R. Kenton Musgrave, Senior Judge